UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHELLE L.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-1073-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the partial denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff contends the administrative law judge ("ALJ") erred in assessing certain medical opinions, discounting her allegations based on her activities, discounting the lay evidence, omitting analysis of the Cooperative Disability Investigation Unit ("CDIU") report in the written decision, and in relying on the vocational expert ("VE") testimony at step five. (Dkt. # 13 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1963, has a high school diploma, and has worked as a customer service representative, bookkeeper, and housekeeper. AR at 506, 519. Plaintiff was last gainfully

ORDER - 1

employed in January 2008. *Id.*

In May and July 2012, respectively, Plaintiff applied for DIB and SSI, alleging disability as of January 6, 2011. AR at 466-78. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 284-92, 294-314, 316-18. After the ALJ conducted hearings in April 2014 and March 2015 (*id.* at 44-126), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 22-36.

The Appeals Council denied Plaintiff's request for review (AR at 1-7), but the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings. *Id.* at 1167-82. On remand, a different ALJ held hearings in September 2018 and January 2019 (*id.* at 1048-1131), and entered a decision on April 19, 2019, denying Plaintiff's DIB application, but finding that Plaintiff was entitled to SSI beginning on December 2, 2018. *Id.* at 1004-35.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability, January 6, 2011.

Step two: Plaintiff's lumbar spine degenerative disease; left hip degenerative joint disease, status post total hip replacement; right hip degenerative joint disease; status post cerebral aneurysm; pancreatitis; anxiety disorder, not otherwise specified; cognitive disorder, not otherwise specified; and alcohol abuse disorder are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: she cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She is able to frequently handle with the left arm. She can perform work that allows her to avoid even moderate exposure to hazards. She can perform simple routine repetitive tasks in a work environment free of fast-paced production requirements, involving simple work-related decisions, and with few, if any, workplace changes.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed prior to December 2, 2018, Plaintiff was not disabled during that time. Beginning on December 2, 2018, there were no jobs that exist in significant numbers in the national economy that Plaintiff could have performed, and she therefore became disabled on that date.

AR at 1004-35.

Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

# IV. DISCUSSION

**A. The ALJ Did Not Err in Assessing the Medical Evidence**

Plaintiff raises several challenges to the ALJ's assessment of the medical opinion evidence, and the Court will address each dispute in turn.

*1. Legal Standards*

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

*2. Sui Twe, M.D.*

Dr. Twe, Plaintiff's longtime treating physician, completed a form medical source statement in March 2013, affirmed that opinion in a February 2014 letter, and completed a DSHS form opinion in February 2014. AR at 893-900, 959, 1602-12. The ALJ acknowledged that Dr. Twe is a treating physician and summarized her conclusions, but indicated that she gave them little weight because the limitations described by Dr. Twe were not supported by clinical findings, and were inconsistent with the record and Plaintiff's activities. *Id.* at 1028-29.

The U.S. District Court for the Western District of Washington previously affirmed a prior ALJ decision discounting Dr. Twe's opinions as unsupported by objective evidence. *See* AR at 1176-78. Although the Commissioner suggests that Plaintiff cannot challenge the ALJ's

reasoning in this case because similar reasoning was previously affirmed, Plaintiff contends that this finding does not constitute "law of the case" because the ALJ did not refer to the court decision in her decision, and instead provided an analysis of Dr. Twe's opinions anew. (Dkt. # 17 at 1.) The "law of the case" doctrine "generally prohibits a court from considering an issue that has already been decided by that court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

Assuming that, in light of the ALJ's reconsideration of Dr. Twe's opinions on remand, Plaintiff's challenge is not foreclosed by the "law of the case" doctrine, the Court finds that the ALJ's decision includes specific and legitimate reasons to discount Dr. Twe's opinions, as was also found in the previous court order. The ALJ reasonably found that Dr. Twe's conclusions were not supported by objective findings in either her own treatment notes or in the remainder of the medical record, and did not err in discounting Dr. Twe's opinions on that basis. Although Plaintiff points to various conclusions specified by Dr. Twe (dkt. # 17 at 2), she does not point to objective evidence that supports those conclusions, and thus has failed to meet her burden to show that the ALJ erred in finding Dr. Twe's opinion to be unsupported.

### 3. Gary Gaffield, D.O.

Dr. Gaffield examined Plaintiff in March 2013. AR at 821-26. Dr. Gaffield opined that *inter alia* Plaintiff should avoid "multiple inclined planes, multiple flights of stairs, and major obstacles in her pathway[,]" due to her "impaired balance and left-side weakness." *Id*. at 826. The ALJ summarized Dr. Gaffield's findings, specifically mentioning his opinion regarding Plaintiff's inclined planes, stairs, and obstacles limitations, and stated that she gave "great weight" to Dr. Gaffield's opinion. *Id*. at 1029.

Plaintiff argues that the ALJ's RFC assessment does not entirely account for Dr.

ORDER - 5

Gaffield's opinion, however. The ALJ found that Plaintiff could occasionally climb ramps and stairs, and needed to avoid even moderate exposure to hazards. AR at 1012-13. Plaintiff argues that the ALJ's restrictions on ramps, stairs, and hazards were not consistent with the more severe restrictions indicated by Dr. Gaffield.

The Commissioner argues that the ALJ appropriately translated Dr. Gaffield's opinion into a succinct RFC, and that the restrictions identified by the ALJ are consistent with, even if not identical to, Dr. Gaffield's opinion. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding that an ALJ appropriately incorporates a physician's opinion by assessing RFC limitations consistent with limitations listed in the opinion, even if the limitations are not identical); *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (holding that it is an ALJ's responsibility to "translat[e] and incorporate[e] clinical findings into a succinct RFC"). The Court agrees, and finds that the Commissioner's argument is strengthened by the fact that a State agency consultant reviewed Dr. Gaffield's opinion, indicated that it should be given great weight, and translated that opinion into the same restrictions included in the ALJ's RFC assessment. *See* AR at 221-24. The ALJ was entitled to rely on a medical opinion translating Dr. Gaffield's opinion into concrete restrictions. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Moreover, as noted by the Commissioner, the U.S. District Court for the Western District of Washington previously found that the ALJ did not err with respect to Dr. Gaffield's opinion, when the prior ALJ assessed the identical restrictions as to ramps, stairs, and hazards. *See* AR at 1175-76. The Court finds that Plaintiff has not established error in the ALJ's assessment of Dr. Gaffield's opinion.

//

### 4. *David Dixon, Ph.D.*

Dr. Dixon performed a consultative psychological examination of Plaintiff in April 2013 and wrote a narrative report describing her symptoms and limitations. AR at 827-34. The ALJ found that the concentration deficits observed by Dr. Dixon were not consistent with Plaintiff's presentation throughout the remainder of the record. *Id*. at 1029. The ALJ also found Dr. Dixon's opinion regarding Plaintiff's concentration deficits to be inconsistent with Plaintiff's activities, specifically refurbishing old furniture, performing yard work, playing computer games, attending AA meetings, and caring for her young granddaughter. *Id*. at 1030. Lastly, the ALJ noted that Plaintiff did not fully report her alcohol use to Dr. Dixon, "which calls into question the accuracy of the examination." *Id*.

Plaintiff argues that the ALJ erred in discounting Dr. Dixon's in light of the remainder of the record, because no other provider performed the extensive testing that Dr. Dixon performed. (Dkt. # 13 at 11-12.) Even if this is true, Plaintiff has not shown that the ALJ's other reasons to discount Dr. Dixon's opinion are invalid, specifically the inconsistency between Dr. Dixon's opinion and Plaintiff's activities, and Plaintiff's failure to accurately report her alcohol use to Dr. Dixon. Plaintiff does not challenge to the reason regarding her failure to fully disclose alcohol use, and this is a legitimate reason to discount Dr. Dixon's opinion. *See, e.g.*, *Oviatt v. Comm'r of Social Sec. Admin.*, 303 Fed. Appx. 519, 522 (9th Cir. Dec. 16, 2008). The ALJ also identified some of Plaintiff's activities that arguably require more concentration than Dr. Dixon found her to have. AR at 1030. These inconsistencies are a specific, legitimate reason to discount Dr. Dixon's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). Because the ALJ provided multiple specific, legitimate reasons to discount Dr.

ORDER - 7

Dixon's opinion, any error as to one of the individual reasons is harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**B.     The ALJ Did Not Err in Relying on Plaintiff's Activities[3]**

In the section of her decision that assesses the reliability of Plaintiff's allegations, the ALJ noted several specific inconsistencies between Plaintiff's allegations and her activities. AR at 1026-28. An ALJ may rely on a claimant's activities that are inconsistent with her testimony as a reason to discount her allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). The ALJ here pointed out inconsistencies between Plaintiff's description of particular physical and mental limitations and other references to her activities, such as cooking independently, socializing and traveling, using the computer, caring for her grandchild, lifting hay bales and feeding farm animals, and driving. AR at 1026-27. The ALJ did not cite those activities as evidence that Plaintiff can perform work activities, but instead cited them as inconsistent with her claimed limitations. *Id.*

Plaintiff argues that the ALJ erred in relying on these activities as evidence of her ability to work. (Dkt. # 13 at 14-15.) To the extent that the ALJ arguably suggested this in another part of the decision (AR at 1027-28), the ALJ's findings in that section do not specifically indicate how the cited activities demonstrate transferable work skills, and thus that portion of the decision does not constitute a valid reason to discount Plaintiff's testimony. That error is harmless, however, in light of the ALJ's valid reasoning that Plaintiff's allegations were inconsistent with

---

[3] Plaintiff addresses the ALJ's discussion of her activities in a separate section of her opening brief, although appears to connect this section to the ALJ's assessment of Dr. Dixon's opinion as well. (Dkt. # 13 at 14-15.) To the extent that Plaintiff intended to challenge the ALJ's reliance on her activities as a reason to discount her allegations, this argument is addressed here. To the extent that Plaintiff intended to challenge the ALJ's finding that her activities contradict Dr. Dixon's opinion, that argument is addressed in the previous section, *supra*.

her activities. Thus, Plaintiff has not shown harmful error in the ALJ's evaluation of her activities.

C.  **The ALJ Did Not Fail to Assess the CDIU Report**

The ALJ discusses the CDIU report on two pages of her decision, and one of the pages is almost entirely blank, due to what appears to be a misplaced page break. AR at 1031-32. Plaintiff suggests that the nearly blank page represents "missing evidence," but, as the Commissioner notes, the text of the decision "seamlessly flows" (dkt. # 14 at 4) from one page to the next, despite the page break, addressing why the ALJ found that the CDIU report was entitled to partial weight. AR at 1031-32. Plaintiff does not respond to this argument in her reply brief. (Dkt. # 17.) The Court agrees with the Commissioner that any suggestion that the ALJ's discussion of the CDIU report is missing is unfounded.

D.  **The ALJ Did Not Err in Discounting Lay Statements**

The record contains statements written by Plaintiff's husband, mother-in-law, and sister-in-law. AR at 1424, 1427, 1431. The ALJ summarized these statements and found them to be inconsistent with the medical record and Plaintiff's activities, specifically as to the limitations the witnesses described as to Plaintiff's memory, concentration, task completion, walking, driving, and performing tasks independently. *Id*. at 1032-33.

An ALJ's reasons to discount a lay statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). Plaintiff argues that the ALJ's reasons here are not germane because "lack of support" from the medical record has been found to be an invalid reason to discount a lay statement. (Dkt. # 13 at 15-16.) Here, however, the ALJ found the lay statements to be *inconsistent* with the medical record, and this reasoning has been

ORDER - 9

affirmed by the Ninth Circuit. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Furthermore, the ALJ also found the lay statements to be inconsistent with Plaintiff's activities, which is another germane reason to discount them. *See Lewis,* 236 F.3d at 511-12 (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports). Because the ALJ provided germane reasons to discount the lay statements, this portion of the ALJ's decision is affirmed.

### E. The ALJ Did Not Harmfully Err at Step Five

Plaintiff raises several challenges to the ALJ's step-five findings. At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

First, Plaintiff argues that the ALJ's hypothetical to the vocational expert ("VE") failed to include certain limitations observed by Dr. Gaffield, and thus the VE's testimony cannot constitute substantial evidence to support the step-five findings. (Dkt. # 13 at 17-18.) Dr. Gaffield did not, however, list those limitations in his medical source statement, and instead provided concrete restrictions that were accounted for by the ALJ (as discussed *supra*). Plaintiff has failed to establish error in the ALJ's step-five findings with respect to Dr. Gaffield's opinion. *See Stubbs-Danielson*, 539 F.3d at 1175-76.

Next, Plaintiff challenges the ALJ's finding that the jobs identified at step five exist in significant numbers, as required by statute. *See* 20 C.F.R. §§ 404.1566, 416.966. Before the hearing, Plaintiff's counsel asked the ALJ to order the VE to produce the documents relied upon to form opinions about the availability of the jobs identified at step five. AR at 1399-1401. The

ORDER - 10

ALJ denied this request, finding that a subpoena was not necessary because counsel had the opportunity to cross-examine the VE at the hearing and also had public access to job numbers information. *Id*. at 1005.

In neither the opening brief nor reply brief does Plaintiff identify any error in the ALJ's denial of the pre-hearing request for a subpoena, although Plaintiff does note that the ALJ denied her request. (Dkt. # 13 at 18.) Instead, Plaintiff turns to focus on a post-hearing letter counsel filed detailing his objections to the VE's hearing testimony. AR at 1498-99. Plaintiff refers to that letter to apparently raise those same issues to the Court, but Plaintiff does not explicitly identify the alleged error(s) raised in the post-hearing letter in her opening brief to this Court. (Dkt. # 13 at 18.)

In the reply brief, Plaintiff again references the post-hearing brief and states that the ALJ's decision contains "no reference to the post hearing letter. It appears it was never considered by the ALJ even though much of what was stated in the letter was documented." (Dkt. # 17 at 7.) This statement is untrue. The ALJ's decision contains a detailed discussion of the post-hearing letter and explains why the ALJ overruled Plaintiff's objection to the VE's testimony. AR at 1006-07. Given that Plaintiff apparently overlooked this portion of the ALJ's decision, she failed to meet her burden to identify error in the ALJ's decision with respect to the post-hearing letter.

Nonetheless, Plaintiff has shown that the ALJ's step-five findings are erroneous in one respect: the ALJ found that Plaintiff could perform a job (mail clerk) that requires level-three reasoning, which is inconsistent with the RFC restriction to simple, routine, repetitive tasks. *See* Dictionary of Occupational Titles 209.687-026, 1991 WL 671813 (Jan. 1, 2016); *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015). The other two jobs identified at step five require

only level-two reasoning, however, which is consistent with the ALJ's RFC assessment, and the VE testified that there are more than 200,000 of these jobs in the national economy. *See* AR at 1034. Plaintiff has not shown or even argued that those two jobs are insufficient to support the ALJ's step-five finding on their own, and thus the error with respect to the mail clerk job is harmless. *See, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 24th day of January, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge